309 So.2d 184 (1975)
Hubert F. HUTCHINSON, Sr., et al., Appellants,
v.
STATE of Florida, Appellee.
No. N-545.
District Court of Appeal of Florida, First District.
March 12, 1975.
*185 J. Robert Hughes, of Barron, Redding, Boggs & Burke, Panama City, for appellants.
Robert L. Shevin, Atty. Gen., and Andrew W. Lindsey, Asst. Atty. Gen., for appellee.
BOYER, Judge.
The three appellants were indicted for murder in the second degree, and all three pled not guilty. Tried simultaneously, they were found guilty as charged and were each sentenced to 20 years in prison. They have appealed their convictions on the basis of the sufficiency of the evidence and certain alleged deficiencies in the trial court's instructions to the jury.
Although appellants were directly charged in the indictment with the stabbing death of the victim, Kenneth Kirkland, contrary to F.S. 782.04, the sole basis upon which the appellants' convictions could conceivably have rested is the other statute specified in the indictment, F.S. 776.011, the aiding and abetting statute. All of the evidence adduced at trial indicates that, while the appellants were involved in the argument and fight which immediately preceded the victim's death, the only person who actually stabbed the decedent was Mackie Kilpatrick, who was not involved in the trial which gave rise to this appeal.
We first, therefore, examine the decisional law of this State to determine what is necessary for a conviction under the aiding and abetting statute. The general rule in this State vis-a-vis aiding and abetting, may be found in Ryals et al. v. State, Sup. Ct.Fla. 1933, 150 So. 132. The Court there stated that the verdict "should have been supported by some showing, either by direct or circumstantial evidence ... that [the defendants] were not only physically present at the scene of the killing, but that they had either beforehand conspired to aid or abet the killing, or had, after being present, aided or abetted in some manner, by acts or suggestions, the perpetration of the killing, accompanied by participation on their part in the actual killer's felonious design to commit the killing that was accomplished."
This Court applied the foregoing standard in Casey v. State, Fla.App.1st 1972, 266 So.2d 366. In that case the defendant, angered when her dress was stained, sought retribution from the person whom she held responsible and therefore queried of her boyfriend, "Aren't you going to do something about it?" A short time thereafter, while the defendant and her companion were outside the bar where the incident took place, and after more urging by the defendant, the boyfriend told the defendant to go back inside the bar and bring out the fellow who had allegedly stained her dress. Not long after he came out of the bar and exchanged a few words with the boyfriend, the boyfriend pulled a gun which he used to shoot and kill the victim. The jury returned a verdict of murder in the third degree which this Court reversed on several grounds. Our first ground was the absence of evidence adduced at trial to show that the defendant intended that her boyfriend kill the victim. Second, "there was no evidence that she aided in the killing; nor that she counseled the killing; nor that she abetted or procured such offense [the killing] to be committed," as prescribed by the statute. (266 So.2d at page 367) Third, it was uncontradicted that the defendant had no knowledge that her boyfriend *186 had the gun. Finally, the killing in the case was a spur of the moment decision by the killer in which the defendant did not participate.
The principles enunciated in the Casey and Ryals decisions are applicable to the case sub judice. For purposes of analysis, it is necessary to undertake a thorough examination of the factual situation involved. The trouble began when Kirkland, the deceased, stopped the automobile of appellant H.F. Hutchinson, Jr., (Buck) as it passed in front of Kirkland's home and asked Buck not to speed down the street because of the presence of small children. Words were exchanged between Buck and Kirkland before the arrival of the ultimate perpetrator of the crime, Mackie Kilpatrick. Shortly thereafter, Hubert F. Hutchinson, Sr., (Frank) drove by, noticed a commotion, went home, dropped off some children who were in his truck, and returned to the Kirkland home. Shortly after Frank's arrival, appellant Hubert LeRoy Hutchinson (Mack) arrived on the scene and joined the discussion. The discussion grew more heated and a fight soon developed. After the first few blows were struck, Kirkland and Kilpatrick became involved in a separate fight of their own, some distance removed from the appellants and the other participants in the fight which included the deceased's wife and eldest son. The fighting temporarily ended when Mrs. Kirkland emerged from the house with a shotgun. However, the fisticuffs quickly resumed after Buck, aided by his father, grabbed the gun away from Mrs. Kirkland. The fight between Kirkland and Kilpatrick continued across the road from the Kirkland house but came to an abrupt conclusion when Kilpatrick pulled a knife from his back pocket and inflicted the fatal blow.
We have, with utmost care, scrutinized the record in this case. Insofar as two of the appellants are concerned, there is absolutely nothing in the record to justify a conviction for second degree murder based on the aiding and abetting statute. Neither Hubert F. Hutchinson, Sr. (Frank) or Hubert LeRoy Hutchinson (Mack) were aware that Mackie Kilpatrick possessed the means and ability to effect the death of Kirkland: Nor is there evidence that either of those two appellants had a conscious intent that Kilpatrick should harm Kirkland. Just as in the Casey case, the killing appears to have been a spur of the moment decision of Kilpatrick's in which neither Frank nor Mack participated. Because the State's evidence of second degree murder against those two appellants was insufficient to go to the jury on the aider and abetter theory, the motion for directed verdict made at the end of the State's case should have been granted as to Hubert F. Hutchinson, Sr. and Hubert LeRoy Hutchinson.
The record does reveal testimony which, if believed by the jury, could have resulted in the conviction of Hubert F. Hutchinson, Jr. (Buck) for second degree murder on the aider and abetter theory. The victim's widow, Mrs. Jo Ann Kirkland, testified that Mackie, in the presence of Buck but before either of the other two appellants had arrived on the scene, told Mr. Kirkland, "If it's trouble you want, I can give you that. I will cut your God damn guts out." At this point, Buck is alleged to have said, "You won't have to be by yourself." This testimony, if believed, would indicate that Buck not only knew that Kilpatrick was able to kill Kirkland but also that he would have some help.
While the evidence in the record is sufficient to support the conviction of Buck, we nevertheless reverse his conviction for a new trial because of the trial court's failure to properly instruct the jury on aiding and abetting. The appellants' trial counsel requested an instruction noting the necessity of participation in the felonious design, which the court refused to give. Instead, the court, after first reading the aiding *187 and abetting statute verbatim, charged the jury as follows:
"Now, the word aid  aid and abet, I want to charge you as to the meaning of those words. I charge you that if a person aids and abets another in the commission of a crime, he is as guilty as the party that commits that crime and is thus aided and abetted by him. The words aid and abet comprehend all the assistance rendered by acts, words, encouragement and support, or presence, actual or constructive, to render assistance, should it become necessary.
"I further charge you that it is not necessary that community of purpose should be proven, by positive testimony, but is for the jury to determine from the conduct of the parties and all the evidence in the case, whether it existed."
It is quite true, as the State points out, that an appellate court ordinarily will not reverse for denying certain instructions if the aggregate charges given are complete, clear and not likely to confuse or mislead the jury. (Williams v. Scott, Fla.App.2d 1963, 153 So.2d 18) It is likewise true that a word-for-word recital of the Florida Standard Jury Instructions in Criminal Cases is not an absolute requirement. But where, as here, the only conceivable theory upon which the appellants could have been convicted was based on the aiding and abetting statute, it was essential that the jury be adequately instructed as to the elements of aiding and abetting. Although the trial court need not have used the exact words found in Standard Jury Instruction 2.04, his charge should have included words which informed the jury that "for one person to be guilty of a crime physically committed by another, it is necessary that he have a conscious intent that the criminal act shall be done and that, pursuant to that intent, he do some act or say some word which was intended to and which did incite, cause, encourage, assist or induce another person to actually commit the crime." The fact that the jury did not receive the benefit of such an instruction forces this Court to reverse the conviction of Hubert F. Hutchinson, Jr. and remand his case for a new trial.
Reversed.
RAWLS, C.J., and McCORD, J., concur.