JOANOS, Judge.
This cause is before us on appeal from the judgment and sentence entered against appellant. A jury found appellant guilty of armed robbery and first degree murder. The state’s theory was that appellant was an aider and abetter of the crimes and thus was a principal. The State did not seek the death penalty and appellant was sentenced to life imprisonment with a minimum mandatory term of twenty-five years. We reverse.
Hall appeals her conviction and sentence, contending that the trial court erred in denying her motions for judgment of acquittal. Hall asserts that the State’s case was based solely on circumstantial evidence which failed to establish a prima facie case from which the jury could properly infer that appellant committed the alleged crimes. We agree.
The evidence presented first showed that appellant, an unemployed security officer, was seen conversing with her friend, Perry, at a bowling alley on the night in question. Testimony revealed that earlier she had asked if Perry had picked up the night deposit yet, and later she was overheard asking Perry for a loan. She was also seen driving off in the same direction after Perry left. Perry was en route to drop off the bowling alley’s night deposit at a bank, which was a task he regularly performed as part of his job as a security officer.
Appellant was also seen with Albert Freer that evening, prior to the occurrence of the crimes in question. Albert Freer, also unemployed, has been convicted in a separate trial of the same crimes for which appellant was charged. The evidence next revealed that Perry was found shot to death, handcuffed to the inside of his truck, in a ditch off the highway. The victim was discovered by a couple who were driving past and stopped to render assistance. While at the scene, appellant drove up to them in a van and spoke with the couple about what had occurred. The couple told appellant to call 911 because the victim had been shot. Appellant placed the emergency call and gave pertinent information, but gave a fictitious name when asked to identify herself. The evidence further revealed that appellant was later seen again that night in the company of Albert Freer, the prime suspect in the case.
Law enforcement never found the $1,200 night deposit money that Perry was believed to be carrying to the bank from the bowling alley. One of the murder weapons, believed to be Perry’s own .38 revolver was also not found. Of the usable prints, Freer’s prints were located on the inside of the door of Perry’s truck. There was no evidence presented of appellant’s prints. Testimony revealed that all three individuals, Freer, Hall and Perry knew each other, and that Freer and Perry were not friends.
*663 Evidence also revealed that appellant and Freer went to the police station of their own accord later in the day on which Perry was found dead, and spoke with sheriffs deputies about their knowledge of Perry’s actions the night before. Appellant lied and said she was with Freer the entire evening. Appellant did not become a suspect until it was discovered she was lying. Appellant also contacted another sheriffs deputy at a later date and told her that she had been at the bank that night looking for Perry, and earlier in the evening had returned his pistol to him.
The State called Freer as a witness in Hall’s case but Freer’s testimony did not in any way adversely affect Hall. On the contrary, Freer’s grand jury testimony that was read into evidence supported Hall’s story that she did not become aware of Perry’s death until she approached the scene at the ditch.
Hall testified that she had lied when she gave her earlier story about being with Freer all night because she was afraid that he was involved and wanted to give him an alibi. The evidence revealed that at some point a couple of months later Freer and Hall became lovers. At the close of the State’s case, and at the close of all the evidence, appellant’s motions for judgment of acquittal were denied. The case went to the jury. Appellant was convicted of aiding and abetting in the shooting of victim Perry while engaged in the perpetration of a felony in violation of § 782.04 and § 775.-087(2), Florida Statutes. Appellant was also convicted of armed robbery in violation of § 812.13 and § 775.087(2), Florida Statutes.
The State’s theory of appellant’s guilt as a perpetrator in the crimes charged was based on the fact that she was seen with the principal suspect, Albert Freer, before and after the robbery and murder, and then lied about her activities that night. The State suggested that appellant and Freer together committed the armed robbery and murder at the bank, and then together transported the victim to the ditch and left him there.
The facts established do not constitute the offenses for which appellant is convicted, i.e., first degree murder and armed robbery. Though it is not the function of the trial court to retry the case or substitute its judgment for that of the jury, here the evidence is wholly insufficient to justify a verdict of guilt, and it is therefore the duty of the appellate court to reverse the judgment of guilt. Parrish v. State, 97 So.2d 356, 358 (Fla. 1st DCA 1957).
Because the State could not place appellant at either crime scene, the State proceeded on the theory of aiding and abetting. To prove aiding and abetting the State must prove beyond a reasonable doubt that 1) a crime was committed, 2) the defendant aided in the commission of the crime, 3) defendant had knowledge of the impending crime and the specific intent to participate. Pack v. State, 381 So.2d 1199 (Fla. 2d DCA 1980); Fox v. State, 469 So.2d 800 (Fla. 1st DCA 1985), rev. denied, 480 So.2d 1296 (Fla.1985). See also, Weeks v. State, 492 So.2d 719 (Fla. 1st DCA 1986).
Although the State proved a murder was committed and a robbery occurred, it did not prove that Hall knew of the robbery beforehand or actively participated in an armed robbery. Also, except for suggesting to the jury that Hall was unemployed, and presenting testimony that Hall was overheard requesting a loan from Perry, the State presented no evidence as to Hall’s specific intent to participate in an armed robbery or murder. The State infers that defendant’s unemployment status provided her with the motive and criminal intent to participate in the robbery and killing of her friend. Only if the evidence is sufficient to establish an inference that the accused had knowledge that the crime was going to be committed and the specific intent to participate or aid in its perpetration, does it exclude the reasonable inference that the accused had no knowledge of the crime until it occurred [or afterwards] and thus did not intend to assist in its commission. Fox at 805.
*664 The State also presented no evidence as to any act committed by defendant to aid or abet in the killing of Perry, i.e., the state did not establish that she shot him, drove the van that transported him, or handcuffed him.
Recently this court has reversed and remanded with instruction to vacate judgment and sentence based on the impermissible stacking of inferences. In Weeks v. State, 492 So.2d 719 (Fla. 1st DCA 1986) this court found that in attempting to build a prima facie case out of the evidence presented to them, the jury would have to infer the use of a boat and truck as instru-mentalities of the crime. Then the jury would have had to infer that the instruments were used with appellant’s permission.
Where two or more inferences in regard to the existence of criminal intent and criminal acts must be drawn from the evidence and then pyramided to prove the offense charged, the evidence lacks the conclusive nature to support a conviction. Collins v. State, 438 So.2d 1036, 1038 (Fla. 2d DCA 1983).
Weeks at 721.
In the instant case, the entire position of the State is based on stacking inference upon inference. The State asks the jury to infer that, because defendant was seen with Freer prior to, and after Perry’s murder, she was with Freer during the perpetration of an armed robbery and a murder; that she knew of the robbery and murder beforehand, and had the intent to participate in both of these crimes. Likewise, the jury must infer that because defendant made inquiry in the bowling alley as to whether Perry picked up the night deposit, and asked him for a loan, that she was planning to rob him of the night deposit. The jury must infer that defendant was at the bank, and either drove Freer, transported, robbed, or shot Perry, at one or both scenes of the crime. Also they must infer that after appearing at the scene of the crime voluntarily, Hall failed to give her real name when she called the emergency number to protect herself from criminal suspicion. The jury would have to infer that the defendant planned to benefit from the stolen money, though no money was ever found or connected in any way with either Hall or Freer. Also the jury would have to infer that defendant lied when she said she spent all night with Freer to protect herself, rather than to protect Freer, of whom she was fond and suspected was implicated in the Crime. “Circumstantial evidence is not sufficient when it requires such pyramiding of inferences in order to arrive at a conclusion of guilt.” Weeks at 722.
REVERSED and REMANDED to the trial court with instructions to vacate the judgment and sentences and to dismiss the charges.
THOMPSON and NIMMONS, JJ., concur.